OUTLAND *v.* OUTLAND.

SPECIFIC PERFORMANCE — ORAL CONTRACT AND PERFORMANCE ESTABLISHED.

In a suit against decedent's estate for the specific performance of an oral contract whereby her brother was to have her home in consideration of his living with her and assisting her in whatever way he could, evidence *held*, sufficient to establish said contract and its performance by the brother to decedent's satisfaction.

Appeal from Kent; Brown (William B.), J. Submitted October 7, 1926. (Docket No. 26.) Decided December 8, 1926.

Bill by John Outland against Samuel Outland and others for specific performance of a, land contract. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Turner & Boyd,* for plaintiff.

*Elias P. Harmon,* for defendants.

Specific Performance, 36 Cyc. p. 674; 44 L. R. A. (N. S.) 748; 25 R. C. L. 307.

SNOW, J.     Plaintiff, by bill in chancery, seeks to enforce against the estate of Catherine Boyd and her heirs an oral agreement which he claims was made between him and Mrs. Boyd, a widowed sister, in 1915, by the terms of which he was to come and live with her and assist her in whatever way he could, and upon her death was to have her home in Grand Rapids.     The chancellor in his opinion recognized the rule that a court of equity might compel the specific performance of a contract of this character, if the same were established with reasonable certainty, but concluded that plaintiff had

"failed to establish that there was an agreement or contract between the plaintiff and Mrs. Boyd, when he went to live with her or afterwards, as to any service or consideration he was to render her for which he was to be compensated, and the plaintiff has failed to show that he rendered any service to her for which he would be entitled to compensation."

We are constrained to believe this the wrong conclusion.     Careful study of the record convinces us that it was clearly established by competent evidence that such contract was made between them, and that plaintiff performed his part thereof in a manner that now entitles him to specific performance on the part of the estate.

Thomas S. Jefferson, a Pullman car porter, in June, 1923, loaned Mrs. Boyd $1,600 on the home for the purpose of paying up the contract she then had, taking title to the property in himself, and giving back to her a contract of sale, upon which was indorsed the following:

"For a valuable consideration we hereby consent that Mrs. Catherine Boyd, the second party, may have the right at any time she so desires to transfer any part of her interest in this contract to her brother John Outland, but to no other person without our written consent."

The chancellor was of the opinion that this indorsement tended to disprove the claimed oral agreement, observing that if plaintiff was to have her property at her death "the indorsement should have reflected the agreement, rather than that it should be limited to the right to assign in the future as Mrs. Boyd might determine." But plaintiff argues, and we think with some force, that Mrs. Boyd believed that this indorsement took care of the matter without further action on her part and that therefore she never made an assignment of the contract to plaintiff. Belief that plaintiff's theory in this respect is correct is strengthened by the evidence of Mrs. Jefferson that when the contract was made Mrs. Boyd said: "I want a statement put on this thing whereby all will know that I have turned this property over to John at my death," and said: "How can I do that?"

As there were no witnesses to the original oral agreement claimed on the part of plaintiff to have been made between the parties, and as plaintiff himself was barred by statute from testifying to its terms, the only way it could be established was by proof from disinterested witnesses whom Mrs. Boyd had told about it. To this end there was offered the testimony of Mr. and Mrs. Jefferson, which was to the effect that Mrs. Boyd had told them of such contract, and that John had performed his part thereof. That of Mrs. Jefferson is particularly to the point. She testified that Mrs. Boyd on one occasion said to her:

"After my husband died I had John come and live with me, and I told him if he came and lived with me and kept up the expenses, help keep up the expenses of the home, after my death I will give him the premises, and he came and lived with me and kept up the premises," etc.

She also testified that John was not a person to loaf, and that he worked whenever he had work to do. Con-

vincing proof was also furnished by this witness that John paid $200 on the old contract when the $1,600 loan was made by the Jeffersons; that he also paid taxes on the property, and made many payments on the contract.

It would be unprofitable to review all of the testimony offered by plaintiff to prove the contract and his compliance with its terms. But to like effect was the testimony of their minister, Rev. Northcross, who testified he loaned John the $200 he paid on the contract, and that Mrs. Boyd told him "that she promised John that if he would come and live with her, that he could have the property—and help her, that he could have the property at her death." It was also established that John had made improvements to the property by putting on a roof and laying cement walks, and testimony was produced that he did everything in his power to aid his sister, and that he was in fact a great help to her.

Defendants offered proof, by a number of witnesses, to the effect that John had not performed his part of the contract he claims to have made with his sister; that he was lazy and shiftless; that he was not always friendly with his sister, and prepared his own meals and ate them in his room. There is evidence also that Mrs. Boyd earned her own living by taking in roomers and working for others, and it is argued the money used by plaintiff in paying taxes and on the contract was in fact her money and not his. In substance, defendants' claim is that John was simply a poor relation, that he was taken in by Mrs. Boyd and given a home, and that he is really indebted to her therefor and entitled to no more of her property than the others of her heirs.

We have reviewed with care the evidence of all of the witnesses sworn at the trial, and while we have not had the benefit of personal contact with them as

has the chancellor, we are impressed that the contract between plaintiff and Mrs. Boyd was made; that it was always her intent that he was to have her property; and that he performed his part of the bargain to the best of his ability and to her satisfaction.  Her remaining heirs, brother and sisters, lived in distant cities, and, while on friendly terms with her, did little or nothing to assist her during her lifetime.  Further discussion of the evidence would seem to be without profit to any one.  In arriving at our conclusion, neither the affidavits used on a motion for rehearing before the chancellor, nor the testimony of Mr. Turner, which was of doubtful competency, has been considered.

The case is reversed, and a decree may be entered in favor of the plaintiff, declaring him to have all the right, title, and interest, in and to the property and the contract of sale, that Catherine Boyd would have, had she lived until the conditions named therein had been on her part performed.

Costs to plaintiff.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.