FARMER *v.* GARRETT.

SPECIFIC PERFORMANCE—ORAL CONTRACT TO LEAVE PROPERTY—PER-
FORMANCE—EVIDENCE.

Evidence that plaintiff when 15 years of age was taken by his
half brother to deceased's home where he remained some
19 years, performing services about the rooming and boarding
house maintained by deceased and his wife who were childless
and turning over some of his earnings when employed else-
where, remaining unmarried in accordance with deceased's
wishes, and other circumstances including testimony of ac-
knowledgment and appreciation by deceased *held,* to sustain
finding of trial judge that alleged oral contract of deceased to
leave all of his property to plaintiff in return for latter's per-
formance of work required of him for remainder of deceased's
life was entered into and performed by plaintiff, notwithstand-
ing testimony that four months before death deceased had
executed a will about two hours before returning home in-
toxicated while on an automobile ride with defendant, then
about 25 years of age, and her mother, in which will defendant
had been made sole beneficiary.

Appeal from Wayne; Elliott (Philip), J., pre-
siding. Submitted November 10, 1938. (Docket
No. 108, Calendar No. 40,271.) Decided February 2,
1939.

Bill by Edward Farmer against Vivian Frances
Garrett and Flossie M. Jackson, executrix of the
estate of Richard B. Draper, deceased, for specific
performance of an oral contract. Decree for plain-
tiff. Defendant Garrett appeals. Affirmed.

*Mayer C. Brown,* for plaintiff.

*Raymond P. Baubie,* for defendant.

NORTH, J.    This is a suit in equity in which plaintiff seeks specific performance of an oral contract alleged to have been made by Richard Draper, now deceased, with Edward Farmer, plaintiff.    It is plaintiff's claim it was agreed in this oral contract that in consideration of plaintiff staying with Richard Draper and doing the work required of him for Draper and his wife during the remainder of their lives, that Draper upon his death would leave all his property to plaintiff.    Defendants deny the making of such oral contract, and as a part of their defense introduced in evidence the will of Richard Draper executed May 6, 1935, wherein Vivian Garrett, one of the defendants herein, was made the sole beneficiary.    Draper died September 9, 1935.    The circuit judge found the alleged contract proven and entered a decree for specific performance.    Vivian Garrett has appealed; but the other defendant, the executrix of Draper's estate, has not appealed.

There is testimony showing that in 1916, when plaintiff was 15 years old, he was brought from another State to Detroit by his half brother, and that this was under an arrangement or agreement which the half brother had with Draper as to his taking the boy into his family, rearing him as his son, and if the boy did what was right he would have Draper's property upon the latter's death.    At the time of this arrangement Richard Draper was separated from his wife, Ann Draper; and together with Elizabeth Jefferson he was operating a rooming and boarding house in Detroit.    In 1921, after securing a divorce

in 1920 from his first wife, Draper married Elizabeth Jefferson.

At the time of the court hearing plaintiff's half brother who had brought him to Detroit was dead. So far as the record discloses there was no living person competent to testify as to the arrangement entered into between Draper and this half brother concerning plaintiff. But one of plaintiff's witnesses, Berry Lyles, testified that Mr. Draper in 1922 told him the arrangement with the half brother was as follows:

"He (Draper) told me he got him and made a promise to his brother John, that he didn't have no children and his wife didn't have any, that he made a promise to his brother John, if he let him raise this boy he would raise him decent enough, and if the boy worked out to be all right, and they gone, he would never regret it, that everything they had would belong to him, because he had no relation whatever; that's what he told me times and times."

There was testimony by George M. Cook, a postal employee, that he wanted to purchase the home of Mr. and Mrs. Draper in 1931 and that Draper told him, "It is not for sale. This goes to my son Edward."

Another witness for plaintiff, Mrs. Millie Henry, who together with her husband lived in Mr. Draper's home during the last months of his life, testified that during this time she heard Draper tell plaintiff the property belonged to him, that everything would go to him; and that plaintiff thereupon thanked Draper. This witness testified she heard like statements on several occasions. Mr. Henry testified that during the last illness of Draper plaintiff did

the work about the house and also took care of Draper; and that on one occasion he heard Draper say to plaintiff who had been away from the home during part of an evening, "Where have you been? * * * You want to stay pretty close to me. * * * What I got will be yours when I am gone," and plaintiff then replied: "All right. I see."

There is abundance of testimony in the record to the fact that Draper repeatedly stated that it was his intention and desire plaintiff should have his property if plaintiff survived Draper and his wife. The latter died March 3, 1935, and as noted above Draper's death occurred September 9, 1935. Neither of them left a surviving child or other near relative. There is testimony justifying the conclusion that during the 19 years intervening between the inception of this relationship and Draper's death, plaintiff lived almost continuously in the Draper home, which for much of the period, if not all of it, was a boarding and rooming house. There is abundance of testimony that plaintiff continually and faithfully assisted the Drapers in the work about this place, even working at household duties during his off hours when he was employed in factory work. There is also testimony that when employed elsewhere he turned over his earnings, in whole or in part, to Mr. Draper. Plaintiff never married, and there is testimony that Mr. Draper did not want him to marry. The record is replete with testimony tending to establish performance by plaintiff of the oral contract under which he seeks to recover; and there is also the testimony of several witnesses of the acknowledgment and appreciation by Mr. Draper of such performance.

Notwithstanding this showing as to the alleged agreement and its performance, Draper, as noted above, by a will executed May 6, 1935, gave all of his property to appellant, Vivian Garrett. A fact urged in support of Draper's satisfaction with the testamentary disposition of his property is that from the date of the will to the time of his death, about four months later, he had the will in his personal possession, but did not alter or destroy it. Just prior to the filing of plaintiff's bill of complaint, the Draper will was admitted to probate in Wayne county, and no appeal has been taken from the order of the probate court. While we are not here concerned with the validity or invalidity of the Draper will, since it was introduced in evidence as tending to disprove the agreement of which plaintiff seeks specific performance, the circumstances surrounding the making of this will may properly be noted. At the time of its execution Draper was approximately 75 years of age. Vivian Garrett, whom Draper made his sole beneficiary, was about 25 years of age, so far as disclosed by the record in no way related to him, and said to have been a social worker. On the afternoon of the day the will was made Vivian Garrett, together with her mother and step-father, took Draper for an automobile ride. This was about three months after Draper's wife had died. There is testimony that at this stage in his life Draper was intemperate. The record discloses the will was prepared by a notary public about 2 o'clock in the afternoon; and at 4 o'clock these people who had Draper in charge brought him home in a state of intoxication. There is testimony that he staggered and had the smell of liquor on his breath. According to

some testimony, he was entirely sober when he left his home a few hours before. When Draper returned home, appellant's mother, Mrs. Jackson, left with an occupant of the Draper house what remained of a bottle of whisky which, as shown by the testimony of the person with whom it was left, Mrs. Jackson had purchased. In passing it may be noted that, notwithstanding appellant and her mother and step-father contradict much of the testimony just above referred to, still it may have had a material bearing with the trial judge in weighing other testimony given in behalf of appellant by herself and her parents.

Our review of this record satisfies us that the testimony was ample to sustain the trial judge who found that Draper entered into the alleged oral agreement, with plaintiff, that plaintiff performed his part of the agreement, and that he was entitled to a decree of specific performance. The instant case falls within our holdings in *Bassett* v. *American Baptist Publication Society,* 215 Mich. 126 (15 A. L. R. 213); *Outland* v. *Outland,* 237 Mich. 122; *Puddy* v. *Sharpe,* 248 Mich. 147; *Mayes* v. *Central Trust Co.,* 284 Mich. 504. The decree entered in the circuit court is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and MCALLISTER, JJ., concurred.